[PUBLISH]

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 12, 2005
THOMAS K. KAHN
CLERK

**No. 04-16304**

D.C. Docket No. 04-20326-CV-CMA

DON PEEBLES,

Plaintiff-Appellant,

versus

MERRILL LYNCH, PIERCE, FENNER
& SMITH INCORPORATED,

Defendant-Appellee.

**Appeal from the United States District Court
for the Southern District of Florida**

**(December 12, 2005)**

**Before TJOFLAT and BARKETT, Circuit Judges, and FULLER\*, Chief
District Judge.**

\* Honorable Mark E. Fuller, Chief United States District Judge for the Middle District of
Alabama, sitting by designation.

**FULLER, Chief District Judge:**

Plaintiff-appellant Don Peebles ("Peebles") sought to vacate a zero dollar arbitration award by filing a Petition to Vacate Arbitration Award in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. Contending that 28 U.S.C. § 1332(a) provided a basis for federal subject matter jurisdiction, Defendant-appellee Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") removed the action to the United States District Court for the Southern District of Florida. Peebles objected to the removal contending that the minimum amount in controversy required for subject matter jurisdiction pursuant to 28 U.S.C. § 1332 was not met. The district court entered an order in which it held that it had subject matter jurisdiction over the case. By a separate order, the district court denied Peebles' petition to vacate the arbitration award. Peebles appeals the district court's jurisdiction ruling and the denial of the petition to vacate the arbitration award. Because we find that the district court properly determined that it had subject matter jurisdiction over this case and find no error in the district court's denial of the petition to vacate the arbitration award, we AFFIRM.

## I. BACKGROUND

Peebles is a real estate developer who was a member of several public-

private partnerships that developed city-owned properties into hotels or other uses and who worked on other private sector real estate development opportunities. Peebles' profession demanded that he have financial liquidity to comply with government fiscal mandates and those of commercial lenders. Prior to his relationship with Merrill Lynch, Peebles kept his finances in low risk products such as certificates of deposit or low-yield mutual funds.

In May of 1997, Peebles began his relationship with Merrill Lynch by opening an account and engaging the services of Lance Slaughter ("Slaughter"), whom he met through a family member. At the time the account was opened, Peebles stated account objectives were total return with a risk tolerance of moderate. Peebles advised Slaughter that his profession required him to have readily available funds and that he was therefore risk averse and unwilling to invest in highly speculative securities. During the course of his relationship with Slaughter and Merrill Lynch, Peebles was involved in the management of his investments and exercised control over his account.

Until early 1999, Slaughter invested Peebles' money in non-technology equities that met Peebles' stated goals. Initially, Slaughter recommended that Peebles purchase large-cap value stocks such as Eastman Kodak, General Motors, Phillip Morris, 3M, Exxon, Sears, American Express, Chevron, and Boeing.

Peebles was not enthusiastic about these recommendations and rejected them indicating that he was looking for higher returns than such investments would yield. Peebles indicated that he made better returns on his real estate investments and directed Slaughter to locate a selection of real estate investment trusts for his review.

In 1998 and 1999, Peebles began investing in technology stocks. Impressed by significant publicly reported gains in the technology sector, Peebles expressed an interest in such stocks to Slaughter. Slaughter advised Peebles of the risks associated with these investments as well as with his investment philosophy. In 1999, Peebles transferred more money to Slaughter, and Slaughter began to purchase highly speculative technology stocks. When Peebles inquired about these transactions, Slaughter told him that Merrill Lynch's top analysts highly recommended the transactions and that these opinions were based on Merrill Lynch's internet research group's reports. Later, Peebles learned that Merrill Lynch knowingly promoted purchases of certain stocks by issuing falsely favorable reports about companies while at the same time Merrill Lynch's banking division was acting as the investment banker for these companies. As a result of his reliance on these favorable reports and his investments in these companies,

4

Peebles suffered over $1,000,000 in losses.[1]

In July of 2001, Peebles filed a Statement of Claim and submitted his claims against Merrill Lynch to arbitration pursuant to an agreement between the parties. Peebles presented the following claims: (1) violation of Section 517.301 of Florida Statutes; (2) fraud and misrepresentation; (3) breach of fiduciary duty; (4) violation of article III, Section 2 of the NASD's Rules of Fair Practice; (5) violation of NYSE Rule 405; (6) failure to supervise; (7) failure to execute/breach of contract; and (8) unauthorized trading. The causes of action relate to the following activities in Peebles' account: (1) sale of shares of stock of Franklin Bancorp; (2) purchase of shares of numerous stocks including – Fox Entertainment Group, Inc., Revlon, Inc., Sunbeam Corp., 24/7 Media, At Home, Axtent Tech, Ayava, Azurix, BMC Software, Etoys, Gaileo International, IXL Entertainment, Novell, Lycos, People Soft, Qualcomm, and Yahoo; and (3) purchase of Patriot Hospitality and other unspecified real estate investment trusts. In the Amended Statement of Claim, Peebles requested compensatory damages

---

[1] The thrust of Peebles' claims against Merrill Lynch is that he was defrauded by Merrill Lynch by virtue of its use of a stock rating system which did not reflect its research analysts' true opinions of certain companies and that Merrill Lynch failed to disclose that the firm's ratings of technology securities were tainted by undisclosed conflicts of interest. The principal challenged securities sold to Peebles were 24/7 Media and At Home (or Excite@Home). Peebles claims that Merrill Lynch research analysts were recommending "buys" on these securities while at the same time privately expressing the view that they were not good investments.

between $1,000,000 and $2,000,000, plus interest, punitive damages, attorneys' fees, the costs of the arbitration proceedings, including forum fees and expert witness fees, and such other relief as is deemed fair.

Peebles' claims against Merrill Lynch were submitted to a four-day arbitration hearing before an NASD panel composed of non-lawyers in July of 2003. As part of his case in chief, Peebles relied on evidence that Merrill Lynch had admitted that it published research reports on two internet companies that violated anti-fraud provisions of the federal securities laws and published research reports on five other internet companies that expressed views inconsistent with the analysts' privately expressed negative views in violation of NASD advertising rules. Merrill Lynch had published research reports on 24/7 Media Inc. and Excite @ Home that violated NASD's advertising rules as well as NASD's rule requiring members to observe high standards of commercial honor and just and equitable principals of trade. Merrill Lynch failed to supervise its research analysts in relation to internet securities and its systems were inadequate to prevent violations of the law and NASD rules. Merrill Lynch had violated specific federal securities laws and NASD rules by its conduct including its failure to supervise and manage the conflicts of interest that its research analysts had due to undue influence from the investment banking side of the firm. Slaughter had provided Peebles with

6

research reports for the companies in which he had invested including 24/7 Media and Excite @ Home. Peebles claimed he relied on the reports and Slaughter's recommendations in deciding to purchase these stocks and hold them, which caused him to lose money.

Part of Merrill Lynch's defense at the arbitration hearing was based on a decision and order entered in a case in the United States District Court for the Southern District of New York about a week before the arbitration hearing called *In re Merrill Lynch, Inc. Research Reports Sec. Litig.,* 273 F. Supp. 2d 351 (S.D.N.Y. 2003). Merrill Lynch mentioned this decision in both its opening statement and its closing argument. Peebles had an opportunity to express to the arbitration panel his view that the case did not supply the appropriate legal analysis for claims of the type he had brought.

On July 16, 2003, the arbitration panel issued a zero dollar arbitration award. Specifically, the arbitration award dismissed all of Peebles' claims, denied all requests for attorneys' fees from Peebles and Merrill Lynch, denied Peebles' requests for relief pursuant to Florida Statutes chapter 517, and denied all claims for relief including Peebles' claims for punitive damages. The arbitration panel did not state a basis for its award.

On October 10, 2003, Peebles filed a Petition to Vacate Arbitration Award

7

in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. In the Petition to Vacate Arbitration Award, Peebles argued: (1) that the arbitration panel manifestly disregarded applicable law; (2) that the decision of the panel was arbitrary and capricious; and (3) that the award was procured by undue means. Peebles specifically requested that the arbitration award be vacated, the matter remanded to the NASD for a new hearing before a new arbitration panel, and such other relief as the court deemed appropriate.

Pursuant to 28 U.S.C. §§ 1332 and 1441, Merrill Lynch removed the case to the United States District Court for the Southern District of Florida. Peebles objected to the removal contending that the minimum amount in controversy required for subject matter jurisdiction pursuant to 28 U.S.C. § 1332 was not met. After taking argument from the parties on the issue, the district court held that the minimum amount in controversy for diversity jurisdiction was met because Peebles not only sought to vacate the zero dollar arbitration award, but also requested a new hearing where a different panel would be urged to award Peebles up to $2,000,000 in compensatory damages.

On November 1, 2004, the district court denied Peebles' petition to vacate the arbitration award. Noting that the judicial review of arbitration awards was extremely narrow, the district court rejected each of the three grounds advanced in

8

the petition. The sole statutory ground for the petition was that the award was procured by undue means; essentially Peebles argued that Merrill Lynch misled the panel about the law and that constituted undue means. The district court explained that undue means meant bribery, corruption, or physical threat and rejected Peebles' contention that there had been undue means. The district court held that before it could turn to the non-statutory grounds proposed by Peebles, it must be satisfied that Peebles had demonstrated that there was no proper basis for the award, which is hard to do when, as here, the arbitration panel did not provide a rationale for the award. When there is no rationale set forth, the district court explained that the onus is on the party requesting vacatur to refute every possible rational basis on which the arbitrator could have granted relief. The district court found that Peebles' arguments were mere repetitions of the arguments made before the arbitration panel and did not satisfy the standard required for the district court to address any of Peebles' non-statutory grounds for vacating the arbitration award. Specifically, the district court found that Peebles failed to demonstrate that there was no rational basis upon which the award could have been based. The district court nevertheless presented an alternative holding by reviewing Peebles non-statutory grounds (award was based on manifest disregard for the law or award was arbitrary and capricious) and denied vacatur based on them as well.

9

Peebles filed a timely notice of appeal on November 30, 2004. On appeal, Peebles asserts that: (1) the district court lacked subject matter jurisdiction over the case; and (2) the district court erred when it held that the arbitration award need not be vacated on the basis of a manifest disregard of the law.

## II. STANDARDS OF REVIEW

The Eleventh Circuit Court of Appeals reviews rulings on the subject-matter jurisdiction of a federal court *de novo*. *See, e.g., MacGinnitie v. Hobbs Group, LLC,* 420 F.3d 1234, 1239 (11th Cir. 2005); *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1318 (11th Cir. 2001).

The Eleventh Circuit Court of Appeals reviews orders confirming arbitration awards for clear error with respect to factual findings and *de novo* with respect to the district court's legal conclusions. *See, e.g., Gianelli Money Purchase Plan & Trust v. ADM Investor Servs., Inc.,* 146 F.3d 1309, 1311 (11th Cir. 1998); *Montes v. Shearson Lehman Bros., Inc.,* 128 F.3d 1456, 1459 n.3 (11th Cir. 1997).

## III. DISCUSSION

### A. Subject Matter Jurisdiction

The Federal Arbitration Act does not confer subject matter jurisdiction over petitions to vacate arbitration awards, nor does it create independent federal

question jurisdiction. *See Baltin v. Alaron Trading Corp.,* 128 F.3d 1466, 1469 (11th Cir. 1997), *cert. denied,* 525 U.S. 841 (1998). Independent grounds for subject matter jurisdiction must be demonstrated. *Id.*

When Merrill Lynch removed this action to the United States District Court for the Southern District of Florida, it argued that the court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. Pursuant to 28 U.S.C. § 1332, district courts have original subject matter jurisdiction over civil actions where the amount in controversy exceeds the sum or value of $75,000 and the action is between citizens of different states. *See* 28 U.S.C. § 1332(a)(1). In this case there is no dispute concerning whether the action is between citizens of different states.[2] The sole issue relating to subject matter jurisdiction is whether the amount in controversy exceeds $75,000.

At issue is whether the amount in controversy is controlled by the amount claimed by Peebles in his original action or the amount of the arbitration award. Peebles contends that he seeks no monetary relief by this action and that the real relief he seeks is a new arbitration. Peebles argues that in all matters involving petitions to vacate arbitration awards, the amount in controversy is always the

---

[2] Peebles is a citizen of Florida. For purposes of the determining diversity jurisdiction, Merrill Lynch is a citizen of Delaware, where it is incorporated, and New York, where it has its principal place of business.

11

amount of the arbitration award and not the amount sought in the underlying action. In support of his argument, Peebles relies on *Baltin v. Alaron Trading Corp.,* 128 F.3d 1466 (11th Cir. 1997).

On the other hand, Merrill Lynch contends that because Peebles seeks to vacate the zero dollar arbitration award and have the case remanded for a new arbitration before a different panel who would consider his request for damages between $1,000,000 and $2,000,000, the amount in controversy requirement is satisfied by the sum sought in his statement of claim. Put another way, Merrill Lynch contends that in cases, such as this one, in which a party is seeking a new opportunity to pursue a claim for an amount in excess of $75,000, that amount and not the arbitration award is the amount in controversy.

This issue is a matter of first impression for this court. *Baltin* does not speak to the issue raised here because "the maximum remedy sought" by the investors was the vacatur of the arbitration award against them that did not exceed the minimum required to satisfy 28 U.S.C. § 1332. 128 F.3d at 1472. Here the maximum remedy Peebles sought was vacatur of a zero dollar arbitration award *and* a new arbitration hearing at which he could urge his argument that he was entitled to up to $2,000,000 in damages. We hold that a federal court has subject matter jurisdiction where a party seeking to vacate an arbitration award is also

12

seeking a new arbitration hearing at which he will demand a sum which exceeds the amount in controversy for diversity jurisdiction purposes. This approach is consistent with the approach taken by other circuits that have had occasion to address this question. *See, e.g., Theis Research, Inc. v. Brown & Bain,* 400 F.3d 659 (9th Cir. 2005); *Bull HN Info. Sys., Inc. v. Hutson*, 229 F.3d 321 (1st Cir. 2000).

We conclude that in the present case the monetary threshold of $75,000 for diversity jurisdiction under 28 U.S.C. § 1332(a) has been met. There is no dispute as to the diversity of the parties. The district court, therefore, had subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

**B. Review of the Refusal to Vacate the Arbitration Award**

Peebles also appeals the district court's refusal to vacate the arbitrator's award, arguing that the award evidenced a manifest disregard of the law. Peebles, however, bears a not insignificant burden of asserting sufficient grounds to vacate the award. "The Federal Arbitration Act ("FAA") provides that a federal district court can vacate an arbitration award, but only in extremely narrow circumstances." *Gianelli Money Purchase Plan & Trust,* 146 F.3d at 1311 (citing 9 U.S.C. § 10). Indeed, great deference is afforded to arbitration awards.

A court reviewing a petition to vacate an arbitration award may be asked to

13

examine the four statutory grounds for vacating arbitration awards set forth in 9 U.S.C. § 10(a).[3]  While Peebles urged one of the four statutory grounds below, he has not challenged the portion of the district court's decision rejecting his argument for vacatur pursuant to that ground.  In addition to the four statutory grounds, the Eleventh Circuit Court of Appeals has recognized three non-statutory bases for vacatur of an arbitration award.  The award may be vacated (1) if it is arbitrary and capricious, (2) if its enforcement is contrary to public policy, or (3) if it evinces a manifest disregard of the law.  *Montes,* 128 F.3d at 1458-59, 1461-62.

Peebles' sole non-statutory argument on appeal[4] is that the arbitration

---

[3]  Pursuant to the Federal Arbitration Act, a court may vacate an arbitration award in the following four circumstances:

> (1) Where the award was procured by corruption, fraud, or undue means.
> (2) Where there was evident partiality or corruption of the arbitrators, or either of them.
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

[4]  When the case was pending before the district court, Peebles also argued that the arbitration award was arbitrary and capricious.  The district court rejected this contention.  Peebles did not challenge this aspect of the district court's ruling in his opening brief and has waived this ground for appeal.

14

panel's decision evinces manifest disregard for the law. While the law of the circuit does recognize that an arbitration decision can be vacated if the arbitrators, in making their decision, acted in manifest disregard of the law, a litigant arguing that an arbitrator acted in manifest disregard of the law must show something more than a misinterpretation, misstatement, or misapplication of the law. A manifest disregard for the law involves a conscious and deliberate decision to ignore the applicable law. "Consequently, 'there must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it.'" *University Commons-Urbana, Ltd., v. Universal Constructors Inc.,* 304 F.3d 1331, 1337 (11th Cir. 2002) (quoting *O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc.,* 857 F.2d 742, 747 (11th Cir. 1988)).

We find no error in the district court's determination that there was no evidence to suggest that the arbitration panel deliberately ignored relevant law. At most, the arbitration panel may have misunderstood the effect and weight to be given to cases cited by the parties. On the record before us, we cannot find proof that the arbitrators recognized a clear rule of law and chose to ignore it. Therefore, we cannot find that the arbitrators acted in manifest disregard for the law.

## IV. CONCLUSION

The district court properly determined that 28 U.S.C. § 1332(a) provides a basis for federal subject matter jurisdiction over this action. Moreover, the district court properly found that the arbitration award should not be vacated. Accordingly, we **AFFIRM.**