[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 4, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-16207
Non-Argument Calendar
_____

D. C. Docket No. 05-01866-CV-T-26-MAP

CARL F. TUSCANO, SR.,

Plaintiff-Appellant,

versus

EVENING JOURNAL ASSOCIATION,
a corporation of the State of New Jersey,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 4, 2006)

Before CARNES, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Carl F. Tuscano, Sr., appeals pro se the district court's sua sponte order dismissing with prejudice his pro se civil complaint against the Evening Journal Association ("the Evening Journal"), after the Evening Journal removed the case from the Sixth Judicial Circuit Court in and for Pasco County, Florida, to the United States District Court for the Middle District of Florida based on diversity of citizenship, pursuant to 28 U.S.C. §§ 1332 and 1441.[1]  Tuscano argues that the district court erred in (1) concluding that it lacked jurisdiction, and (2) failing, in the alternative, to remand the case back to state court, pursuant to 28 U.S.C. § 1447(c).  For the reasons set forth more fully below, we affirm.

In September 2005, Tuscano filed the above-referenced civil complaint in the Sixth Judicial Circuit Court in and for Pasco County, Florida, asserting the following facts: (1) he had entered into binding arbitration with the Evening Journal in the State of New Jersey; (2) as a result of this arbitration, the arbitrator had awarded Tuscano a total sum of $201,119; (3) this award was incorporated into a judgment and signed by a state court judge; and (4) the Evening Journal, which had not fully complied with this order, still owed him $106,995, i.e. $134,115, the amount allegedly owed to him pursuant to the arbitration award, less $27,120, the

---

[1]  A defendant may remove to federal court a civil action brought in state court, provided that the federal court has original jurisdiction over the action.  See 28 U.S.C. § 1441(a).  Moreover, original jurisdiction may be based upon diversity of citizenship.  See 28 U.S.C. § 1332(a)(1).

amount the Evening Star allegedly had paid him. Tuscano also included that he was a Florida resident and that the Evening Journal was a resident of the State of New Jersey. Tuscano sought as relief an order instructing the Evening Journal to comply with the judgment and to pay a fair rate of interest and punitive damages.

In October 2005, the Evening Journal removed the instant complaint to the United States District Court for the Middle District of Florida, pursuant to §§ 1332 and 1441, based on diversity of citizenship. The Evening Journal explained that Tuscano had admitted on the face of his complaint that (1) he was a resident of the State of Florida, (2) the Evening Journal was a resident of the State of New Jersey, and (3) the amount in controversy exceeded $75,000.[2] The Evening Journal also moved for an enlargement of time to respond to Tuscano's complaint, asserting, in part, that Tuscano's allegations and claims were identical to claims he had asserted in prior litigation he filed in the District Court for the Middle District of Florida.

This prior litigation included an April 2005 pro se complaint by Tuscano against the Evening Journal, filed in the District Court for the Middle District of Florida, in which Tuscano asserted claims relating to the Evening Journal's alleged failure to comply with the 1979 arbitration award and the state court's 1980 final

---

[2] The Evening Journal clarified that, because it was incorporated under the laws of the State of Delaware and maintained its principal place of business in New Jersey, it was a citizen of Delaware and New Jersey.

judgment. See Tuscano v. The Evening Journal Association, Case No. 8:05-cv-112 (June 22, 2005) (unpub.).[3] In its order dismissing this complaint, the district court discussed that, on April 11, 1980, Tuscano's counsel had filed in state court a "Warrant to Satisfy Judgment," confirming that the judgment had been satisfied. See id. at 1-2. The district court also noted that, in 2002 and 2004, Tuscano had filed in New Jersey state courts three pleadings seeking to enforce the 1980 judgment, which were all dismissed with prejudice. See id. at 2.

Moreover, the district court explained in its dismissal order that Tuscano previously had filed in the district court: (1) a December 2003 complaint alleging that the owner and publisher of the Evening Journal was in contempt of court and had committed fraud and theft in relation to the arbitration award and state court judgment, which the district court sua sponte dismissed based on its determination that Tuscano had to seek a remedy from the New Jersey court that had approved the judgment; and (2) an August 2004 complaint against the Evening Star, which the court had dismissed with prejudice based on Tuscano's failure to serve the Evening Star with the complaint. See id. The district court ultimately

_____

[3] Although the district court's order relating to this prior litigation is not part of the record on appeal, we may take judicial notice of it. See Young v. City of Augusta, Ga, Through DeVaney, 59 F.3d 1160, 1166 n.11 (11th Cir. 1995) (explaining that a court may take judicial notice of another court order, at least for the limited purpose of recognizing the judicial action taken or the subject matter of the litigation).

4

(1) dismissed the April 2005 complaint, (2) explained that it lacked subject matter jurisdiction, and (3) enjoined Tuscano from filing more actions in the district court relating to the 1979 arbitration award and the state court's 1980 judgment. See id. at 2-3. Tuscano did not appeal any of these prior orders.

On October 13, 2005, the district court sua sponte dismissed with prejudice the instant complaint. The court acknowledged that Tuscano had filed it in state court and, thus, complied with the previous court order not to file more cases in the district court relating to the 1979 arbitration award and the 1980 judgment. The court, however, explained that (1) subject-matter jurisdiction was lacking, and (2) in two previous orders, the court had ruled that this 1980 arbitration judgment had "long been satisfied." In explaining this second ground, the court also discussed that Tuscano had failed to appeal either of the court's earlier dismissals and, thus, could not re-litigate his claims through the instant action.

On October 28, 2005, Tuscano filed a motion to remand the complaint back to the state court, pursuant to § 1447(c), based on the district court's determination that it lacked subject matter jurisdiction. The district court summarily denied this motion as moot. Tuscano then filed a notice of appeal, appealing both the dismissal of his complaint with prejudice and the order denying his motion for remand.

5

Tuscano argues on appeal that the district court had subject matter jurisdiction to enforce his arbitration award, including correctly calculating his social security and pension benefits, regardless of when the arbitration award was entered. Tuscano contends that, to the extent a "Warrant of Satisfaction" was entered in state court in April 1980, this document did not specify how the award was satisfied. Tuscano also asserts that, although he previously raised challenges relating to this arbitration award in New Jersey state courts, these proceedings had not been fairly conducted. Moreover, Tuscano contends that, because his complaint was dismissed for lack of subject matter jurisdiction, the district court erred in denying his motion to remand the case back to the state court.

We review de novo rulings on a federal court's subject matter jurisdiction. Peebles v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 431 F.3d 1320, 1324 (11th Cir. 2005). "The validity of an arbitration agreement is generally governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "FAA"), which was enacted in 1925 to reverse the longstanding judicial hostility toward arbitration." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005), petition for cert. filed, (Jan. 30, 2006) (No. 05-959). "The FAA embodies a liberal federal policy favoring arbitration agreements." Id. (marks and quotations omitted). The purpose of the FAA was "to relieve congestion in the courts and to provide parties

with an alternative method for dispute resolution that is speedier and less costly than litigation." Id. (quotation omitted).

Federal courts and state courts have concurrent jurisdiction to enforce the FAA. Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1469 (11th Cir. 1997) (citing Moses H. Cone Memorial Hosp. v. Mercury Const, Corp., 460 U.S. 1, 25, 103 S.Ct. 927, 942, 74 L.Ed.2d 765 (1983)). Although the FAA states that "the United States court in and for the district wherein the [arbitration] award was made may make an order" vacating, modifying, or correcting the award upon application by a party to the arbitration, see 9 U.S.C. §§ 10-11, motions under these provisions begin a separate proceeding and venue is not limited to the district of the arbitration, see Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co., 529 U.S. 193, 197-204, 120 S.Ct. 1331, 1335-39, 146 L.Ed.2d 171 (2000).

The FAA, however, neither confers subject matter jurisdiction over petitions to vacate arbitration awards, nor does it create independent federal question jurisdiction. Peebles, 431 F.3d at 1325. Thus, "[i]ndependent grounds for subject matter jurisdiction must be demonstrated." Id. Under 28 U.S.C. § 1332, district courts have original subject matter jurisdiction over civil actions where (1) the amount in controversy exceeds the sum or value of $75,000, and (2) the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). Because the Evening

Journal did not contest that the instant action involved citizens of different states,[4] and because the amount in controversy, at least as reflected on the face of Tuscano's complaint, exceeded $75,000, diversity jurisdiction existed. The district court, thus, erred in concluding that it lacked subject matter jurisdiction to review Tuscano's complaint.

Regardless, we affirm the court's dismissal of the instant complaint because the complaint is clearly barred by the doctrine of res judicata. See Fisherman Against Destruction of Environment, Inc. v. Closter Farms, Inc., 300 F.3d 1294, 1296-97 (11th Cir. 2002) (discussing that we may affirm a decision of the district court based "on any adequate ground, even if it is other than the one on which the court actually relied"). "Barring a claim on the basis of res judicata is a determination of law" that we review de novo. Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999).

To the extent the district court previously dismissed civil actions filed by Tuscano, we apply federal law, because "federal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction." E.E.O.C. v. Pemco Aeroplex, Inc., 383 F.3d 1280, 1285 (11th Cir.

---

[4] For purposes of § 1332 and § 1441, a corporation is a citizen of any state by which it has been incorporated and of the state where it has its principal place of business. See 28 U.S.C. § 1332(c)(1).

8

2004) (quotation omitted). The doctrine of res judicata bars the filing of claims that were raised or could have been raised in an earlier proceeding. Ragsdale, 183 F.3d at 1238. A claim is barred by this doctrine if all four of the following elements are met: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." Id.

We explained in Ragsdale that, "if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." See id. at 1239. Here, the district court previously dismissed actions Tuscano brought against the Evening Star or its owner, and this prior litigation involved the same arbitration award and judgment relating to this award. See Tuscano, Case No. 8:05-cv-112 at 2-3. Thus, we conclude that the instant action was barred by the doctrine of res judicata. See Ragsdale, 183 F.3d at 1238-39.[5]

_____

[5] To the extent that the district court dismissed with prejudice Tuscano's August 2004 complaint against the Evening Star, based on Tuscano's failure to serve the Evening Star, the former Fifth Circuit explained that a dismissal of a suit for failure to prosecute serves as an adjudication on the merits. See Bierman v. Tampa Elec. Co., 604 F.2d 929, 930-31 (5th Cir. 1979).

9

Furthermore, to the extent New Jersey courts previously addressed and rejected claims relating to the 1979 arbitration award and the 1980 judgment, "a federal court cannot give preclusive effect to a state court order, in subsequent litigation, without determining whether the state from which the order was rendered would give that order preclusive effect through the operation of the rendering state's law of res judicata []." Urfirer v. Cornfeld, 408 F.3d 710, 717 (11th Cir. 2005). Under New Jersey law, res judicata has the purpose of preventing re-litigation of the same controversy between the same parties. Brookshire Equities, LLC v. Montaquiza, 346 N.J.Super. 310, 318, 787 A.2d 942, 947 (App. Div. 2002). For res judicata to apply, there must be: "(1) a final judgment by a court of competent jurisdiction, (2) identity of issues, (3) identity of parties, and (4) identity of the cause of action." Id. (quotation omitted).

Similarly, under New Jersey's "entire controversy doctrine," a plaintiff must assert all claims arising from a single controversy in a single action "at the risk of being precluded from asserting them in the future." In re Estate of Gabrellian, 372 N.J.Super. 432, 444, 859 A.2d 700, 707 (App. Div. 2004). The purposes of this doctrine are: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the

10

reduction of delay." Id. (quotation omitted). This doctrine applies to successive suits with related claims that were known during the time of the original action. Id. Moreover, it is "the factual circumstances giving rise to the controversy itself, rather than the commonality of claims, issues or parties, that triggers the requirement of joinder to create a cohesive and complete litigation." Id. (quotation omitted).

In the instant action, Tuscano asserted that the Evening Journal, which had not fully complied with the 1980 judgment relating to the 1979 arbitration award, still owed him $106,995, i.e. $134,115, the amount allegedly owed to him pursuant to the arbitration award, less $27,120, the amount the Evening Star allegedly had paid him. Tuscano, however, either asserted, or could have asserted, these claims in his prior state actions attacking this judgment and award. See generally Tuscano, Case No. 8:05-cv-112 at 2. Thus, even if we were to conclude that Tuscano was not barred from pursuing the instant action by his prior district court actions, we conclude that he is barred based on either his prior inclusion, or his failure to include, his claims in his prior state court actions. See Brookshire Equities, 346 N.J.Super. at 318, 787 A.2d at 947; see also In re Estate of Gabrellian, 372 N.J.Super. at 444, 859 A.2d at 707.[6]

---

[6] Because the doctrine of res judicata is applicable in the instant case, we need not determine whether the action also was time-barred.

11

Finally, to the extent Tuscano is arguing that the district court erred in denying his motion to remand the case back to the state court, we review de novo a district court's denial of a motion to remand. Behlen v. Merrill Lynch, 311 F.3d 1087, 1090 (11th Cir. 2002). As Tuscano contends, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to the state court from where it was removed. See 28 U.S.C. § 1447(c). Moreover, because § 1447(c) is mandatory, it may not be disregarded based on speculation about the proceeding's futility in state court. See Univ. of South Ala. v. American Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999). However, as discussed above, diversity jurisdiction existed in the instant action, and remand was not mandatory. See id. (explaining that, if jurisdiction exists, removal is appropriate and the court may proceed to the merits of the case).

Accordingly, we conclude that, although the district court had jurisdiction in the instant case, its dismissal with prejudice of Tuscano's complaint was warranted because the complaint was barred under the doctrine of res judicata. Furthermore, the district court did not err in denying Tuscano's motion to remand the case back to state court. We, therefore, affirm.

**AFFIRMED.**