FILED
United States Court of Appeals
Tenth Circuit

November 4, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DMA INTERNATIONAL, INC.,

        Petitioner–Appellant,

v.

QWEST COMMUNICATIONS
INTERNATIONAL, INC., and
affiliated entities,

        Respondents–Appellees.

No. 08-1392

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:08-CV-00358-WDM-BNB)**

---

Submitted on the briefs:[*]

John A. Yaklevich, Moore & Yaklevich, Columbus, Ohio, for the
Petitioner–Appellant.

Christopher J. Koenigs, Sherman & Howard, L.L.C. (Michael B. Carroll, Sherman
& Howard, L.L.C., and David J. Driscoll, Garlin Driscoll Howard LLC with him
on the briefs), Denver, Colorado, for the Respondents–Appellees.

---

Before **LUCERO**, **BALDOCK** and **MURPHY**, Circuit Judges.

---

    [*] The case is unanimously ordered submitted without oral argument
pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G).

**LUCERO**, Circuit Judge.

In April 2004, appellant DMA International, Inc. ("DMA") entered into a contract to provide database research services to appellee Qwest Communications International, Inc. ("Qwest"). When the contract expired eight months later, Qwest refused to pay DMA's final invoice, contending it had already paid DMA in full for its services. DMA accused Qwest of breaching their contract and submitted a demand for arbitration.[1] After the arbitrator ruled in favor of Qwest, DMA filed a motion in the district court to vacate the award under the Federal Arbitration Act ("FAA"). 9 U.S.C. § 10. The district court concluded that it had no basis to vacate the arbitrator's award and granted a counter motion to confirm the award under 9 U.S.C. § 9. DMA appeals that decision. Exercising jurisdiction under 9 U.S.C. § 16(a) and 28 U.S.C. § 1291, we affirm.

## I

The parties' dispute centers on the contract's fees provision, Section 4.1, which states:

> [F]ees for Services rendered hereunder are as follows:
>
> . . . Twenty-five dollars and twenty cents ($25.20) per circuit satisfactorily completed. (Fee is based on an hourly rate of forty-five dollars ($45) with 1.8 circuits completed per hour).

---

[1] In addition to its breach of contract claim, DMA asserted various tort claims against Qwest that are not at issue in this appeal.

DMA argues that this provision unambiguously provides for payments to be based on the number of circuits completed. Using this interpretation, DMA submitted a final invoice to Qwest seeking approximately $5.4 million for roughly 285,000 completed circuits. This invoice included a $1.7 million deduction, representing fees that Qwest had already paid to DMA. Qwest argues that the parties intended for DMA to be paid on an hourly basis, as reflected in the parenthetical portion of Section 4.1. It also claims that DMA knew from the outset that Qwest's budget for DMA's work under the contract was $1.7 million. Based on an hourly rate of forty-five dollars, Qwest contends that the $1.7 million it had already paid DMA satisfied its payment obligations.

After extensive briefing and an eleven-day arbitration hearing in which sixteen witnesses testified and 140 exhibits were admitted, the arbitrator concluded that the contract's fees provision was ambiguous:

> I can not [sic] determine from a reading of . . . section 4.1 at what rate the parties intended that DMA be paid for its work. Was it to be paid per circuit or per hour? Consideration of other relevant portions of the contract only underscore the ambiguity . . . . When is a circuit "completed" and how does that relate to the work DMA was to perform as described at section 1.2 of the [Statement of Work]?

Accordingly, the arbitrator turned to extrinsic evidence to determine the parties' intent. He ultimately concluded that the parties intended for DMA to be paid at the rate of forty-five dollars per hour. Based on this finding, the arbitrator ruled that Qwest had paid DMA in full and dismissed DMA's breach of contract claim.

In the district court, DMA argued that vacatur was warranted because: (1) the award manifestly disregarded the law; (2) the arbitrator was partial or corrupt; (3) the award violated public policy; (4) the arbitrator exceeded his powers; and (5) Qwest did not dispute the final invoice within forty-five days of receipt. In rejecting each of these arguments, the district court based its ruling largely on the highly deferential standard of review applicable to arbitration awards. See Hollern v. Wachovia Secs., Inc., 458 F.3d 1169, 1172 (10th Cir. 2006) (describing that standard as "among the narrowest known to the law" (internal quotation marks omitted)). DMA now appeals.

## II

In reviewing a district court's confirmation of an arbitration award, we review factual findings for clear error and legal determinations de novo. Sheldon v. Vermonty, 269 F.3d 1202, 1206 (10th Cir. 2001). We are required nevertheless to "give extreme deference to the determination of the [arbitrator]." Brown v. Coleman Co., 220 F.3d 1180, 1182 (10th Cir. 2000). "Once an arbitration award is entered, the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances." Ormsbee Dev. Co. v. Grace, 668 F.2d 1140, 1146-47 (10th Cir. 1982). An arbitration award will only be vacated for the reasons enumerated in the FAA, 9 U.S.C. § 10, or for "a handful of judicially-created reasons." Sheldon, 269 F.3d at 1206 (observing that a district

court may set aside an arbitration award based on a violation of public policy, manifest disregard of the law, or denial of a fundamentally fair hearing).

DMA's principal argument on appeal is that the arbitrator's award should be vacated because the arbitrator acted in manifest disregard for the law.[2]  We have characterized the "manifest disregard" standard, however, as "willful inattentiveness to the governing law." Jenkins v. Prudential-Bache Sec. Inc., 847 F.2d 631, 634 (10th Cir. 1988).  Mere errors in an arbitrator's factual findings, or in his interpretation and application of the law, do not justify vacatur.  See Hollern, 458 F.3d at 1172.  "[T]he record [must] show the arbitrator[] knew the law and explicitly disregarded it." Dominion Video Satellite, Inc. v. Echostar Satellite LLC, 430 F.3d 1269, 1274 (10th Cir. 2005) (quoting Bowen v. Amoco Pipeline Co., 254 F.3d 925, 932 (10th Cir. 2001)).

As the district court noted in its order, the arbitrator in the present case correctly stated the law governing contract interpretation in Colorado and applied it to the fees provision.  Once the arbitrator found Section 4.1 was ambiguous, he appropriately considered extrinsic evidence.  See Fort Lyon Canal Co. v. High

---

[2] Qwest contends that this argument is foreclosed by Hall Street Associates v. Mattel, Inc., 128 S. Ct. 1396 (2008), in which the Supreme Court held that 9 U.S.C. § 10 provides the exclusive grounds for expedited vacatur of an arbitration award.  128 S. Ct. at 1403.  Whether manifest disregard for the law remains a valid ground for vacatur is an interesting issue, but as the district court noted, one not central to the resolution of this case.  As described below, the arbitrator did not act with manifest disregard of the law or in any other way that would justify vacatur.

Plains A & M, LLC, 167 P.3d 726, 728-29 (Colo. 2007). The arbitrator's factual findings may not be overturned simply because the evidence was conflicting. See United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 45 (1987) (holding that fact-finding is "a task that exceeds the authority of a court asked to overturn an arbitration award"); see also Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co., 119 F.3d 847, 850 (10th Cir. 1997) ("Neither this court nor the district court . . . has the authority to second-guess the arbitrator's findings or conclusions."). DMA's objections to the award, however vehement, do not demonstrate that the arbitrator acted with manifest disregard of the law.

DMA also argues that vacatur is warranted because the arbitrator exceeded his power in issuing the award, the award violates public policy, and Qwest did not dispute DMA's final invoice within forty-five days of receipt.[3] Because of our highly deferential standard of review, we reject these claims on the same basis as set forth in the district court's order. We therefore affirm the district court's judgment denying DMA's motion to vacate and granting Qwest's motion to confirm the award.

**III**

We turn now to Qwest's motion for attorney fees under 28 U.S.C. § 1927. That provision states:

---

[3] DMA does not argue on appeal that the arbitrator was partial or corrupt.

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Federal Rule of Appellate Procedure 38 similarly empowers this court to "award just damages and single or double costs to the appellee" if we determine that an appeal is frivolous. DMA's appeal in this case regrettably meets both of these standards and an award of attorney fees to Qwest is justified.

We do not take our decision to impose sanctions lightly. To the contrary, we recently took the opportunity to warn those spurned by an arbitration award that we will impose sanctions in appropriate cases. See Lewis v. Circuit City Stores, Inc., 500 F.3d 1140, 1153 (10th Cir. 2007). In Lewis, we reiterated that the bringing of an appeal itself may constitute "sanctionable multiplication of proceedings" justifying an award of costs and fees under § 1927 or damages under Rule 38. 500 F.3d at 1153. "Because arbitration presents such a 'narrow standard of review,' Section 1927 sanctions are warranted if the arguments presented are 'completely meritless.'" Id. (quoting Dominion, 430 F.3d at 1279).

We ultimately decided against imposing sanctions in Lewis, concluding that the losing arguments, though meritless, were nonetheless complex and not "completely frivolous." Id. at 1154. But we quoted at length from the Eleventh Circuit's decision in B.L. Harbert International LLC v. Hercules Steel Co., 441 F.3d 905 (11th Cir. 2006), to underscore the point that unjustified, protracted

attempts to vacate arbitration awards destroy the "promise of arbitration" and will not be tolerated. Lewis, 500 F.3d at 1153 (internal quotation marks omitted). Thus, one who "assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail" does so at the risk of being sanctioned. Id. (quoting B.L. Harbert, 441 F.3d at 913).

The overriding issue in this case is nearly identical to the issue presented in B.L. Harbert. As described in the Eleventh Circuit's opinion:

> This is a typical contractual dispute in which the parties disagree about the meaning of terms of their agreement. There are arguments to be made on both sides of the contractual interpretation issue, and they were made to the arbitrator before being made to the district court and then to us. Even if we were convinced that we would have decided this contractual dispute differently, that would not be nearly enough to set aside the award.

B.L. Harbert, 441 F.3d at 911. As in B.L. Harbert, DMA's argument that the award contradicts the express terms of the contract "is simply another way of saying that the arbitrator clearly erred, and even a showing of clear error on the part of the arbitrator is not enough." Id. at 911-12; accord Hollern, 458 F.3d at 1172; Denver & Rio Grande W. R.R., 119 F.3d at 849; Sheldon, 269 F.3d at 1206. No objectively reasonable interpretation of our case law could have justified DMA's apparent belief that it would prevail given that such an outcome would require us to substitute our interpretation of the contract for that of the arbitrator.

We fully appreciate the financial burden this decision will impose upon DMA's counsel. But only by imposing sanctions in cases like this can we give

- 8 -

breath to the "national policy favoring arbitration." <u>Hall St. Assocs.</u>, 128 S. Ct. at 1405. "If we permit parties who lose in arbitration to freely relitigate their cases in court, arbitration will do nothing to reduce congestion in the judicial system; dispute resolution will be slower instead of faster; and reaching a final decision will cost more instead of less." <u>B.L. Harbert</u>, 441 F.3d at 907. "If arbitration is to be a meaningful alternative to litigation, the parties must be able to trust that the arbitrator's decision will be honored sooner instead of later." <u>Id.</u> at 913. In this case, it was later. Sanctions are therefore warranted to compensate Qwest for the unnecessary legal fees it was forced to spend defending the arbitration award on appeal.

### IV

The judgment of the district court is **AFFIRMED**, and Qwest's motion for single costs and attorney fees is **GRANTED**. We **REMAND** to the district court for a determination of the appropriate amount. DMA's request to file a supplemental appendix is also **GRANTED**.