FILED
United States Court of Appeals
Tenth Circuit

January 30, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MARK F. BEVAN, M.D., in his
individual capacity and as a managing
member of TRC-Four Corners Dialysis
Clinics, LLC, a New Mexico limited
liability company,

        Plaintiff-Appellant,

v.

DAVITA, INC., a Delaware corporation,
f/k/a Total Renal Care, Inc.,

        Defendant-Appellee.

No. 11-2155
(D.C. No. 2:08-CV-00281-MCA-CG)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **McKAY**, and **O'BRIEN**, Circuit Judges.

Dr. Mark Bevan and DaVita, Inc. are joint venture partners who own and

operate several dialysis clinics in the Four Corners region (where Utah, Colorado,

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

New Mexico, and Arizona meet).  In 2007, Dr. Bevan filed suit against DaVita in New Mexico state court, claiming DaVita breached its contractual and fiduciary duties by opening a new clinic with another physician in Durango, Colorado.  DaVita removed the suit to federal court and demanded arbitration, upon which Dr. Bevan was awarded damages and a 44% ownership interest in the Durango clinic.  The district court confirmed the award, but Dr. Bevan appeals, claiming the district court misconstrued the arbitrator's decision.  He says his interest in the Durango clinic is not subject to that facility's operating agreement, as the district court ruled, and any ambiguity in the arbitrator's decision should be remanded to the arbitrator for clarification.  We have jurisdiction under 28 U.S.C. § 1291 and 9 U.S.C. § 16, and affirm the district court's judgment.

I

Back in 1999, when Dr. Bevan formed the joint venture with DaVita's predecessor, he negotiated a 49% or 50% ownership interest in their mutually operated dialysis clinics ("joint venture facilities").  The company, named TRC-Four Corners Dialysis Clinics, LLC, was governed by several contracts, including operating and option agreements ("the Four Corners operating agreement"), which, among other things, provided that if either of the parties developed new business opportunities within the Four Corners region, the other party would have the option to equally participate in those opportunities.  In his 2007 state suit, Dr. Bevan alleged DaVita breached its contractual and fiduciary duties by developing the Durango

- 2 -

clinic with another nephrologist, Dr. Mark Saddler, without informing him of the opportunity. DaVita removed the suit to federal court and demanded arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3, 4. The arbitrator ultimately agreed that DaVita breached its fiduciary duty, and he therefore awarded Dr. Bevan $202,651.00 in damages and a 44% ownership interest in the Durango clinic. To satisfy the award, DaVita attempted to transfer the 44% interest to Dr. Bevan but requested that he sign a transfer agreement, as well as a joinder agreement, which would bind him to the terms of the Durango clinic's operating agreement. Dr. Bevan refused, and both parties moved the district court to confirm the award.

Dr. Bevan's motion did not mention any dispute; he simply asked the court to confirm the arbitration award. DaVita, however, argued that its management role was established by the Durango clinic's operating agreement and Dr. Bevan should therefore take his interest in the clinic pursuant to those terms. DaVita observed that the arbitrator expressly sought to preserve the Durango clinic's governance structure so as to maintain DaVita's control over the facility and competent level of patient care; accordingly, the arbitrator awarded Dr. Bevan a 44% interest, which allowed DaVita to retain a 51% majority interest and Dr. Sadler to retain a 5% minority share.

The district court, faced with these opposing views of the arbitration award, directed the parties to show cause why the case should not be remanded to the arbitrator for clarification. Dr. Bevan responded that remand was appropriate because the Durango clinic's operating agreement contained a host of provisions that

- 3 -

were inconsistent with the arbitrator's decision, including one that gave DaVita sole discretion to make additional capital calls or issue additional ownership units, which could dilute his interest. He also argued that nothing in the arbitrator's decision required that he sign the transfer and joinder agreements, and that other issues relating to the joint venture facilities' management warranted clarification as well.

DaVita, however, opposed a remand. DaVita explained that during arbitration proceedings, Dr. Bevan had effectively sought the same relief by seeking specific performance of the Four Corners operating agreement so as to obtain a 50% interest and control over the Durango clinic, just as he enjoyed at the joint venture facilities. His request was denied, DaVita asserted, because the arbitrator granted him only a 44% minority interest in the Durango clinic to preserve DaVita's control and the satisfactory level of patient care. Thus, DaVita concluded that the arbitrator unambiguously required Dr. Bevan to take his interest subject to the Durango clinic's operating agreement. The district court agreed and confirmed the award accordingly.

Now on appeal to this court, Dr. Bevan insists that a remand to the arbitrator is appropriate. He says the district court erred in confirming the award, which neither specified that his interest in the Durango clinic would be governed by that facility's operating agreement, nor that he must sign DaVita's transfer and joinder agreements. For its part, DaVita maintains that the arbitration decision unambiguously requires Dr. Bevan to take his 44% interest subject to the Durango clinic's operating agreement.

II

"In reviewing a district court's confirmation of an arbitration award, we review factual findings for clear error and legal determinations de novo." *DMA Int'l, Inc. v. Qwest Commc'ns Int'l, Inc.*, 585 F.3d 1341, 1344 (10th Cir. 2009). We nevertheless "give extreme deference to the determination of the arbitrator" because "[o]nce an arbitration award is entered, the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances." *Id.* (brackets and internal quotation marks omitted). Indeed, this highly deferential standard "is among the narrowest known to law," *Hollern v. Wachovia Sec., Inc.*, 458 F.3d 1169, 1172 (10th Cir. 2006) (internal quotation marks omitted), and although a remand to the arbitrator is appropriate where an award is susceptible to more than one reasonable interpretation, "[s]uch remands . . . are to be used sparingly in order not to thwart the interest of achieving finality," *U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 831 (10th Cir. 2005).

Here, the dispute centers on the following portion of the arbitration decision, which awarded Dr. Bevan a 44% interest in the Durango clinic while maintaining DaVita's control:

> As damages for this breach of fiduciary duty, DaVita must disgorge 44% of the net distributions from the Durango chronic facility in the amount of $202,651.00. In addition DaVita must transfer to Dr. Bevan 44% of the ownership of the Durango chronic facility. These distributions represent income from ownership which Dr. Bevan would have acquired if permitted to be involved as an owner of the Durango chronic facility and if DaVita had timely disclosed its participation in the transaction and not breached its fiduciary duty to Dr. Bevan. It also

includes income lost to the Farmington facility which would have gone to Dr. Bevan, but for the breach. I do not award Dr. Bevan a disgorgement of or forfeiture of management fees because the evidence tended to show that DaVita is doing, at least, a competent job of managing the facilities.

The equitable nature of this relief permits me to consider the paramount interest which these parties share—the interests of the patients at the facility whose needs for dialysis services are compelling. *Thus, in order to prevent any possible disruption to the apparently satisfactory governance of that facility, I am exercising my equitable powers to limit the interest which Dr. Bevan may obtain in the Durango acute facility to no more than 44% of the total, which maintains Dr. Saddler's 5% interest and maintains DaVita's control.* I am convinced that such preservation as to the governance of this facility is in the interest of the patients in the Durango chronic facility.

Aplt. App., Vol. 1 at 140 (emphasis added).

Dr. Bevan rightly points out that nothing in the arbitrator's decision requires him to sign DaVita's transfer or joinder agreements, nor does it specify that he will be subject to the Durango clinic's operating agreement. However, the arbitrator's decision is equally silent with regard to his claim that the Four Corners operating agreement should be interposed on the Durango clinic, which would create a conflicting, impractical governing structure. For example, the Four Corners operating agreement requires that Dr. Bevan have the option of participating equally in the development of any new clinic. *See id*. at 66 (Four Corners Option Agreement, § 1(b)). But the Durango clinic's operating agreement specifically prohibits DaVita from developing a new clinic with Dr. Bevan. *See id.* at 300 (Durango Operating Agreement, § 9.6(b)). Even if the arbitrator had excised this prohibition from the Durango clinic's operating agreement, Dr. Saddler's negotiated protection to his

- 6 -

interest in the Durango clinic would be lost. *See Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003) ("An arbitration panel may not determine the rights or obligations of non-parties to the arbitration."). And in any event, there is no support for such an interpretation in the arbitrator's decision.

Instead, the plain language of the decision expressly limits Dr. Bevan's interest so as to preserve the Durango clinic's governance structure. The arbitrator said, "I am exercising my equitable powers to limit the interest which Dr. Bevan may obtain in the Durango acute facility to no more than 44% of the total, which maintains Dr. Saddler's 5% interest and maintains DaVita's control." Aplt. App., Vol. 1 at 140. This language unequivocally restricts Dr. Bevan's interest to 44% and preserves the Durango clinic's governance structure for the benefit of its patients. Dr. Bevan contends that DaVita's control was achieved through its majority ownership interest, but the arbitrator clearly intended to preserve the clinic's governance structure as well. Any modification to that structure would defeat the arbitrator's expressly stated intent. Hence, Dr. Bevan's interest in the Durango clinic is clearly subject to that facility's operating agreement.

And lest there be any lingering doubt, Dr. Bevan effectively sought the same relief during arbitration proceedings, but the arbitrator denied his request. He argued that an equitable remedy for DaVita's fiduciary breach was specific performance of the Four Corners operating agreement. *See id.* at 279-80. He claimed that "specific performance is an appropriate remedy" because "[u]nder the clear terms of the [Four

Corners operating agreement], [he] would have been entitled to a 50% ownership interest in the Durango unit," "which was a unique business opportunity that DaVita took for itself." *Id.* Asserting he would be left "without any degree of control in the Durango" clinic, *id.* at 279, Dr. Bevan asked the arbitrator to convey a 50% interest in the facility to him, as should have happened under the Four Corners operating agreement. *See id.* at 280. The arbitrator denied this relief and instead expressly limited "the interest which Dr. Bevan may obtain in the Durango acute facility to no more than 44% of the total, which maintains Dr. Saddler's 5% interest and maintains DaVita's control." *Id.* at 140. Having failed to obtain this relief during arbitration, Dr. Bevan postulates on appeal that if DaVita had "complied with the Four Corners [operating agreement] and its fiduciary duties . . . , [he] would have enjoyed equal ownership and governance rights which he enjoys under the Four Corners [operating agreement]."[1] Aplt. Br. at 21. Yet that scenario did not play out, and the arbitrator was not persuaded that specific performance was warranted to achieve that result. Rather, the arbitrator was "convinced that [] preservation as to the governance of [the] facility [was] in the interest of the patients in the Durango chronic facility." Aplt. App., Vol. 1 at 140. Dr. Bevan's refusal to accept the arbitrator's decision does

---

[1] This premise—that Dr. Bevan would have negotiated more favorable terms under the Four Corners operating agreement—is the sole basis for Dr. Bevan's argument that the district court erred in suggesting he would have been in the same position as Dr. Saddler in negotiating the terms of the Durango clinic's operating agreement. But the district court was merely presuming that both doctors would have negotiated with DaVita at arm's length, and in any event, the premise is speculative because DaVita did not adhere to the Four Corners operating agreement.

not render the decision ambiguous. Therefore, the district court correctly confirmed the arbitration award.

III

The judgment of the district court is affirmed. Dr. Bevan's motion to strike is granted, as the referenced materials were not before the district court.

Entered for the Court


Monroe G. McKay
Circuit Judge