[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11535
Non-Argument Calendar
_____

D.C. Docket No. 1:19-cv-22977-MGC

JOSE A. TORRES,
ISABEL LITOVICH-QUINTANA,

Plaintiffs - Appellees
Cross Appellants,

versus

MORGAN STANLEY SMITH BARNEY, LLC,
d.b.a. Morgan Stanley,

Defendant - Appellant
Cross Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(December 10, 2020)

Before JORDAN, NEWSOM, and EDMONDSON, Circuit Judges.

PER CURIAM:

Morgan Stanley Smith Barney, LLC ("Morgan Stanley") appeals the district court's confirmation of an arbitration award in favor of Jose Torres and Isabel Litovitch-Quintana ("Petitioners") and the denial of Morgan Stanley's motion to vacate this award. Petitioners cross-appeal the district court's denial of their motion for sanctions. No reversible error has been shown; we affirm.

Briefly stated, Petitioners are former Morgan Stanley clients who purportedly suffered financial losses after investing in funds recommended by a Morgan Stanley financial advisor. Petitioners' Client Agreement with Morgan Stanley contained a mandatory arbitration clause.

In compliance with the Client Agreement, Petitioners initiated arbitration proceedings against Morgan Stanley before the Financial Industry Regulatory Authority ("FINRA"). Petitioners asserted claims for breach of fiduciary duty, negligence, negligent supervision, fraud, breach of contract, and violation of federal, Florida, and Puerto Rico securities laws.

2

Following several days of hearings, the three-member arbitration panel ("Panel") entered an award in favor of Petitioners and against Morgan Stanley. The award included (1) $261,420.63 in compensatory damages and (2) $3 million in monetary sanctions: sanctions imposed based on Morgan Stanley's repeated failure to comply with the Panel's discovery orders.

Petitioners petitioned the district court to confirm the arbitration award. In response, Morgan Stanley moved to vacate the arbitration award. Petitioners also moved for sanctions against Morgan Stanley for raising "patently baseless and frivolous" challenges to the arbitration award.

The district court determined that Morgan Stanley failed to establish a statutory basis for vacating the arbitration award. Accordingly, the district court granted the petition to confirm the arbitration award and denied the motion to vacate the award. The district court also denied Petitioners' motion for sanctions.

I.

"We review confirmations of arbitration awards and denials of motions to vacate arbitration awards under the same standard, reviewing the district court's

3

findings of fact for clear error and its legal conclusions de novo." Frazier v. CitiFinancial Corp., LLC, 604 F.3d 1313, 1321 (11th Cir. 2010).

The Federal Arbitration Act ("FAA") "imposes a heavy presumption in favor of confirming arbitration awards." Riccard v. Prudential Ins. Co. of Am., 307 F.3d 1277, 1288 (11th Cir. 2002). Under the FAA, a federal court's authority to vacate or to modify an arbitration award is limited. Gherardi v. Citigroup Global Mkts., Inc., 975 F.3d 1232, 1236 (11th Cir. 2020). Federal courts may vacate an award only in the four "very unusual circumstances" set forth in 9 U.S.C. § 10(a). Id. Pertinent to this appeal, an arbitration award may be vacated (1) "where there was evident partiality . . . in the arbitrators" or (2) "where the arbitrators exceeded their powers . . .." See 9 U.S.C. § 10(a)(2), (4). The party seeking vacatur bears the burden of proving one of the statutory grounds set forth in section 10(a). Riccard, 307 F.3d at 1289.

A. Evident Partiality

Morgan Stanley first contends that vacatur of the arbitration award is warranted under section 10(a)(2) based on the "evident partiality" of two of the Panel's arbitrators: Arbitrators Ruiz and Pilgrim.

4

We have said that the evident partiality exception must be strictly construed. See Gianelli Money Purchase Plan & Trust v. ADM Inv. Servs., 146 F.3d 1309, 1312 (11th Cir. 1998). Evident partiality exists only where there is (1) an actual conflict or (2) "the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." Id. Morgan Stanley's arguments fall under the second situation.

When a party seeks to establish a potential conflict based on nondisclosure, the party "must establish that the undisclosed facts create a 'reasonable impression of partiality.'" Lifecare Int'l v. CD Med., 68 F.3d 429, 433 (11th Cir. 1995). "[T]he mere appearance of bias or partiality is not enough to set aside an arbitration award." Id. Instead, the alleged partiality must be "direct, definite and capable of demonstration rather than remote, uncertain and speculative." Id. Whether there exists "evident partiality" is a fact-intensive inquiry. Id. at 435.

*Arbitrator Ruiz:*

Morgan Stanley contends that Arbitrator Ruiz failed to make adequate disclosures about a 2002 medical malpractice lawsuit she filed against the hospital where she gave birth in 1995.

5

In her Disclosure Report, Arbitrator Ruiz provided a brief description of the nature of the civil action, the case name, the case number, and the name of the lawyer who represented her. Arbitrator Ruiz also said that a settlement was reached in 2013 and that the case was inactive.

Morgan Stanley complains that Arbitrator Ruiz failed to disclose that some of her claims in the 2002 malpractice action were dismissed as untimely under Puerto Rico's statute of limitations. Because Morgan Stanley asserted a defense in the underlying arbitration based on a Puerto Rico statute of limitations, Morgan Stanley says the undisclosed information is material and creates an impression of potential bias.

We reject this argument. Morgan Stanley has presented no "direct, definite" or demonstrable evidence of partiality. That some of Arbitrator Ruiz's claims -- asserted in a completely unrelated civil action filed 15 years before the initiation of this arbitration -- were dismissed on statute-of-limitation grounds gives rise to no reasonable impression of partiality. Cf. Lifecare Int'l, 68 F.3d at 434 (concluding that an arbitrator's nondisclosure of a scheduling dispute -- between the arbitrator and a lawyer at the law firm representing the defendant to the arbitration -- created no reasonable impression of bias because the dispute (1) involved none of the parties to the arbitration hearing and (2) took place 18 months before the

6

arbitration proceedings).  Morgan Stanley's contention that Arbitrator Ruiz holds a potential bias against parties raising a Puerto Rico statute-of-limitations defense is the kind of remote, uncertain, and speculative assertion of partiality that cannot support a vacatur of an arbitration award.  The district court committed no clear error in finding that the undisclosed information would lead no objective reasonable person to believe that a potential conflict existed.[1]

*Arbitrator Pilgrim:*

Morgan Stanley next contends that Arbitrator Pilgrim failed to disclose properly a foreclosure action.  On her Disclosure Report, Arbitrator Pilgrim disclosed that she had a mortgage with "CitiMortgage (Citigroup)."  Morgan Stanley says, however, that Arbitrator Pilgrim failed to disclose that CitiMortgage purportedly filed a foreclosure action against her in 2013.

---

[1] On appeal, Morgan Stanley mischaracterizes the district court as (1) requiring a showing that Arbitrator Ruiz had a "direct interest" in the underlying arbitration, and (2) creating a "concurrency requirement."  Contrary to Morgan Stanley's assertions, the district court created and imposed no new test for determining evident partiality.  Instead, the district court engaged properly in a fact-intensive inquiry and considered the facts pertinent to this case -- including the timing of the undisclosed events and the relationship of those undisclosed events to the matters at issue in the arbitration.

7

In rejecting Morgan Stanley's argument, the district court first found that Morgan Stanley had failed to establish that Arbitrator Pilgrim knew of the undisclosed foreclosure action. In the alternative, the district court concluded -- even if Arbitrator Pilgrim knew of the action -- that Morgan Stanley had failed to show that a reasonable person would believe a potential conflict existed.

We see no clear error in the district court's finding that Morgan Stanley failed to prove knowledge. The complained-of foreclosure action (filed in state court in November 2013) was discontinued voluntarily after Arbitrator Pilgrim entered into a loan modification agreement with CitiMortgage in January 2014. The record demonstrates that never was Arbitrator Pilgrim served in the foreclosure action. In conjunction with discontinuing the foreclosure action, CitiMortgage's lawyer filed an attorney affirmation with the state court, attesting under penalty of perjury that "[a]fter the Summons and Complaint was filed, service on the defendants was <u>not effectuated</u>." (emphasis added).[2]

---

[2] In its reply brief in the district court, Morgan Stanley attached a letter sent by Arbitrator Pilgrim to CitiMortgage's lawyer in February 2014. In that letter, Arbitrator Pilgrim expressed her "puzzlement" after receiving a summons and complaint <u>after</u> CitiMortgage approved a loan modification and also sought written proof that no foreclosure action had been filed against her. Contrary to Morgan Stanley's position on appeal, this letter is no evidence that Arbitrator Pilgrim knew that she had been named as a defendant in a valid foreclosure action. Instead, it shows only that Arbitrator Pilgrim was served <u>in error</u> in a foreclosure action after CitiMortgage had ceased its foreclosure activity.

8

Moreover, CitiMortgage had only a very tenuous connection to Morgan Stanley.  Morgan Stanley says CitiMortgage was an affiliate of Citigroup Global Markets, Inc. which it says was a "key entity" in the arbitration and a party in a joint venture with Morgan Stanley.  The record evidences, however, that Citigroup Global Markets, Inc. sold its interest in the joint venture in June 2013 -- 5 months before the complained-of foreclosure action was initiated in November 2013.  In other words, the undisclosed foreclosure action involved none of the parties to the underlying arbitration hearing.

Given the absence of overlap between the parties to the foreclosure action and the parties to the arbitration and that the undisclosed foreclosure action was discontinued more than three years before this arbitration was initiated, we cannot conclude that an objective reasonable person would believe a potential conflict existed.  Morgan Stanley has failed to satisfy its burden of showing partiality that is direct, definite, and capable of demonstration.

B. Exceeded Powers

9

Morgan Stanley next contends that the arbitration award must be vacated under section 10(a)(4).  Morgan Stanley says the Panel exceeded its powers in awarding $3 million in monetary sanctions.

We construe section 10(a)(4) very narrowly.  Gherardi, 975 F.3d at 1237.  "A party seeking relief under that provision bears a heavy burden."  Oxford Health Plan LLC v. Sutter, 569 U.S. 564, 569 (2013).

When parties agree to arbitrate their disputes, they "opt out of the court system" and thus, have limited avenues for relief in federal court.  Gherardi, 975 F.3d at 1238.  We have said that "in § 10(a)(4) cases, our review is quasi-jurisdictional: a check to make sure that the arbitration agreement granted the arbitrator authority to reach the issues it resolved."  Id.; see White Springs Agric. Chems., Inc. v. Glawson Invs. Corp., 660 F.3d 1277, 1281 (11th Cir. 2011) ("Because arbitrators derive their power from the parties' agreement, we look to the terms of the governing arbitration clause to determine the powers of the arbitration panel." (quotation omitted)).  "Only if the arbitrator acts outside the scope of his contractually delegated authority -- issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract -- may a court overturn his determination."  Sutter, 569 U.S. at 569

10

(quotations and alterations omitted).  That an arbitrator committed an error (even a serious error) will not warrant vacatur under section 10(a)(4).  Id.

By signing the Client Agreement, the parties in this case "agree[d] that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, . . . concerning or arising from . . . the construction, performance or breach of this or any other agreement between us . . . shall be determined by arbitration . . .."  The Client Agreement also incorporated expressly the rules of the pertinent arbitration forum: in this case, FINRA.  Morgan Stanley then executed a FINRA Arbitration Submission Agreement, agreeing to "submit the present matter in controversy . . . to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure" and "agree[ing] to be bound by these procedures and rules."

That arbitrators have power to impose sanctions under FINRA's Code of Arbitration Procedure ("Code") is undisputed.  The Code authorizes the arbitration panel to "sanction a party for failure to comply with any provision in the Code, or any order of the panel or single arbitrator authorized to act on behalf of the panel."  FINRA Rule 12212(a).  Examples of possible sanctions include "[a]ssessing monetary penalties payable to one or more parties" unless doing so is "prohibited

11

by applicable law." Id. The Code also authorizes sanctions for failing to comply with discovery. FINRA Rule 12511(a).

Here, the Panel imposed monetary sanctions against Morgan Stanley pursuant to Rules 12212 and 12511. The Panel described Morgan Stanley's repeated failure to comply with the Panel's discovery orders. The Panel also noted that -- by withholding documents the Panel deemed "highly relevant to the dispute" -- Morgan Stanley's noncompliance with the Panel's discovery orders caused "extreme prejudice" to Petitioners.

Under the terms of the Client Agreement, the parties conferred authority to the Panel to resolve the disputes in this case. Moreover, the FINRA Rules -- incorporated into the Client Agreement -- provide that "[t]he panel has the authority to interpret and determine the applicability of all provisions under the Code" and that "[s]uch interpretations are final and binding upon the parties." See FINRA Rule 12409. Because the Panel was thus authorized to decide this case and to interpret and apply its own rules in adjudicating the parties' claims, the Panel never exceeded its contractually delegated authority.

On appeal, Morgan Stanley challenges the Panel's award of monetary sanctions as prohibited by "applicable law." Morgan Stanley characterizes the sanctions as "punitive" and, thus, impermissible under the Supreme Court's

12

decision in Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178 (2017) (addressing a federal court's inherent authority to impose sanctions). Morgan Stanley also contends that the Panel exceeded its authority by awarding "an arbitrary amount of sanctions well beyond the amount actually sought by Petitioners."

Whether the Panel applied its rules consistent with "applicable law" or in an arbitrary manner are legal questions that are beyond the limited scope of our judicial review. See White Springs, 660 F.3d at 1283 (declining to address arguments that the arbitration panel exceeded its power by awarding fees prohibited by federal and state law: the courts "cannot . . . review the panel's award for underlying legal error."); Frazier, 604 F.3d at 1324 (concluding that arbitrariness is no basis for vacatur: the statutory grounds set forth in 9 U.S.C. § 10 are exclusive).

Morgan Stanley has failed to establish a statutory basis for vacating the arbitration award. We thus affirm the confirmation of the arbitration award and the district court's denial of Morgan Stanley motion to vacate.


II.


13

On cross-appeal, Petitioners challenge the district court's denial of their motion for sanctions. Relying on our decision in B.L. Harbert Int'l v. Hercules Steel Co., 441 F.3d 905 (11th Cir. 2006), Petitioners contend that sanctions are appropriate because Morgan Stanley's arguments lacked legal merit, were not properly preserved, were based on conclusory allegations, and ignored established precedent.

We review a district court's ruling on sanctions under an abuse-of-discretion standard. Silva v. Pro Transp., Inc., 898 F.3d 1335, 1338-39 (11th Cir. 2018).

In Hercules Steel, we expressed our exasperation with parties "who attempt to salvage arbitration losses through litigation that has no sound basis in the law applicable to arbitration awards." 441 F.3d at 913-14. We also warned that "to further the purposes of the FAA and to protect arbitration as a remedy" courts may "consider imposing sanctions in appropriate cases." Id.

In denying Petitioners' motion for sanctions, the district court acknowledged our decision in Hercules Steel. The district court then explained that Morgan Stanley's arguments -- although unsuccessful -- were not "wholly baseless." On this record, the district court abused no discretion in denying sanctions.

AFFIRMED.

14