2016 OK CIV APP 16

**WELLS FARGO BANK, NATIONAL ASSOCIATION, Plaintiff/Appellee,**

v.

**APACHE TRIBE OF OKLAHOMA, Defendant/Appellant.**

No. 112,765.

Court of Civil Appeals of Oklahoma, Division No. 1.

Aug. 28, 2015.

Rehearing Denied Sept. 22, 2015.

Patrick M. Ryan, Phillip G. Whaley, Ryan, Whaley & Coldiron, Shandy, PLLC, Oklahoma City, OK, and Jerome A. Miranowski, Michael M. Krauss, Faegre, Baker, Daniels, LLP, Minneapolis, MN, for Plaintiff/Appellee.

Jon E. Brightmire, Doerner, Saunders, Daniel & Anderson, LLP, Tulsa, OK, for Defendant/Appellant.

BRIAN JACK GOREE, Presiding Judge.

¶1 In this appeal the Apache Tribe of Oklahoma argues that its limited waiver of sovereign immunity in its agreement with Wells Fargo Bank does not allow Bank to seize general tribal assets to satisfy its judgment against Tribe. It argues the trial court erred in confirming the arbitrator's award holding that Bank may seize such assets.

We affirm the trial court's decision confirming the arbitrator's award.

¶ 2 This is the second appeal in this matter (Oklahoma County District Court case no. CJ–2011–3545) from orders confirming arbitration awards. In June 2008, the Apache Tribe of Oklahoma (Tribe) and Wells Fargo, National Association (Bank) entered into a loan agreement (agreement) wherein Bank loaned Tribe $4,365,000.00. The agreement contains a waiver of sovereign immunity and provides for arbitration of disputes.

¶ 3 In 2010, Tribe stopped paying on the loan, and Bank initiated arbitration proceedings. The arbitrator determined that Tribe's business committee had the authority to waive sovereign immunity on behalf of Tribe and awarded a judgment to Bank in the amount of $2,751,160.00. On November 15, 2011, the trial court entered a judgment confirming the award.

¶ 4 Tribe appealed the judgment (the first appeal) along with subsequent orders issued in aid of Bank's effort to collect its judgment. In *Wells Fargo Bank v. Apache Tribe of Oklahoma*, 2015 OK CIV APP 10, 360 P.3d 1243, (*Apache Tribe* ), the Court of Civil Appeals affirmed the judgment and the subsequent orders, holding that the agreement contains a clear and express limited waiver of Tribe's sovereign immunity, a consent to arbitrate disputes, and an agreement that any arbitration award can be reduced to judgment and enforced in the courts of Oklahoma. It held that the arbitrator did not exceed his authority in awarding Bank the unpaid balance of its loan. It affirmed the trial court judgment confirming the arbitrator's decision, "except to the extent that the Judgment confirms the arbitrator's decision that the Loan Agreement contains a valid waiver of the Tribe's sovereign immunity. That portion of the Judgment is reversed." [1]

¶ 5 Undertaking further efforts to collect its judgment, Bank commenced a new arbitration to determine the scope of its recovery of its judgment against Tribe.[2] Specifically, Bank asked the arbitrator to declare that the post-default transfers from the casinos to Tribe are "Distributions" not permitted by the agreement. It also sought a declaration that the agreement definition of "Enterprise Property" allows it to collect its judgment from Tribe's general, nonexempt cash assets up to the amount of Tribe's unauthorized distributions.

¶ 6 On July 20, 2012, in its Order Granting Wells Fargo's Partial Dispositive Motion, the arbitrator held that between October 2010 and the date of the arbitration, the casinos made unpermitted distributions in the amount of $1,562,131.00. This amount included payments the casino made to the original casino developer, and payments the casino made for the salaries and expenses of the Apache Gaming Commission and the Apache Gaming Board. The arbitrator issued an award that allowed Bank to satisfy up to $1,567,981.00 of the judgment from Tribe's general cash assets. It held that the agreement "permits [Bank] to follow the distributions and recover the full amount of improper Distributions from any cash asset of the Tribe other than those assets that are statutorily exempt." He wrote, "[i]n affect [sic], the general assets of the Tribe have become enterprise property to the extent of the unauthorized distributions." He also wrote, "[t]he definition is very clear. Any transfer or distribution after default retains its character as Enterprise Property. This is a normal and necessary requirement to insure that the Casino (the Enterprise) doesn't dissipate its assets to [Bank's] detriment after default."

¶ 7 The arbitrator held that unauthorized distributions do not lose their character as Enterprise Property just because Tribe treats them as general assets and spends accordingly. He explained:

> obligations by tapping the casino's cash and also transferred money from the casino to itself, even though Tribe was in default under the agreement. In post-collection proceedings, Bank attempted to garnish the bank accounts of Tribe's non-casino bank accounts.

1. In June 2014, the Oklahoma Supreme Court originally granted Tribe's Petition for Certiorari. On December 8, 2014, the Supreme Court entered an order stating that certiorari was improvidently granted and denying certiorari.

2. In conducting post-judgment discovery, Bank came to believe that Tribe paid its own debts and

The Tribe has merged and mixed the received distribution with its general assets and balance sheet by directing the funds be used to pay its general debts. The undersigned cannot find that it was the intent of the parties that the casino be able to distribute and dissipate its assets insulating substantial Casino assets from execution by Wells Fargo. The loan agreement clearly intended that any distribution retain its character as enterprise assets subject to execution by Wells Fargo. It could not be the intent of the parties that the Tribe be able to thwart that right of execution by simply changing the form of the distribution such that it becomes a part of the Tribe's general assets. The only way to give effect to the parties' original intent is to allow execution against those general assets into which the distribution was merged.

¶ 8 The arbitrator explained that a contrary holding would violate a canon of contract construction: if Tribe could shield an unauthorized Distribution from collection by spending the specific dollars so there is nothing left upon which to execute, "it would render parts of the contract unenforceable with no purpose or affect." He concluded, "[t]he terms of the Loan Agreement allow [Bank] to collect on the underlying loan in the Event of Default, and the Tribe cannot evade that real-world objective by shifting funds while retaining assets that could be used to satisfy the Judgment." On April 23, 2013, in its Order Granting Wells Fargo's Dispositive Motion After Submission of Evidentiary Materials, the arbitrator reaffirmed his previous legal conclusions.

¶ 9 On July 29, 2013, in the Oklahoma County District Court, the Tribe filed The Apache Tribe of Oklahoma's Application and Motion to Vacate Arbitration Award, and Brief in Support. It argued that the arbitrator exceeded his powers and jurisdiction by not interpreting the definition of "Enterprise Property," but by rewriting the agreement to add a provision to it—that if the casinos make distributions not permitted under the agreement, Bank can collect its judgment against general tribal assets such as oil and gas tax revenues, car tag revenues, and federal and state funds. Tribe argued that the limited waiver of sovereign immunity in the agreement does not permit Bank to recover its judgment against such general tribal assets. Its contention is that Bank is limited to Enterprise Property—assets of the casino. Even if there were "unpermitted Distributions," the agreement does not allow Bank to reach general assets of Tribe to satisfy its judgment.

¶ 10 On March 19, 2014, the trial court filed its Order Denying the Apache Tribe of Oklahoma's Application and Motion to Vacate Arbitration Award and Order Confirming Arbitration Award (the Order).

¶ 11 In the Order, the trial court stated it had reviewed *Apache Tribe*. It found it had jurisdiction to confirm the arbitration award and that review of the award is governed by the Federal Arbitration Act (FAA).

¶ 12 The trial court noted that in *Apache Tribe*, the Court of Civil Appeals held it was for the trial court, not the arbitrator to determine whether Tribe waived its sovereign immunity as to the agreement. Accordingly, the trial court found and held that the agreement waived Tribe's sovereign immunity.[3]

¶ 13 The trial court stated that the FAA provides that the trial court must confirm an arbitrator's award if none of four specified grounds exist to vacate the award. *See* 9 U.S.C. §§ 9, 10 (2002).[4] Pursuant to 9

---

3. The agreement provides for a limited waiver of sovereign immunity:

[Tribe] hereby expressly and irrevocably waives its sovereign immunity (and any defense based thereon) from any suit, action or proceeding (including an arbitration proceeding) ... It being expressly understood that any recovery upon any judgment resulting therefrom shall be limited to recovery against the enterprise property (exclusive of real property, or any interest therein).

4. Section 9 provides, in part:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made, any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated,

U.S.C. § 10(a)(4), Tribe alleged the arbitrator exceeded his powers. The parties agreed to arbitrate any and all disputes connected in any way to the agreement. *Apache Tribe* ¶ 34; agreement § 11.24(a). The award is based on the interpretation of the agreement. The arbitrator did not exceed his authority because the award "draws its essence" from the agreement.

¶ 14 The trial court also reasoned that even under a *de novo* review, there is no reason to vacate the award. Under the agreement, Bank may satisfy the judgment by collecting on Enterprise Property as defined in the agreement.[5] It held the arbitrator correctly determined that the parties intended that Bank could satisfy the judgment from Tribe's general assets up to the amount of improper, post-default distributions from Tribe's casinos to Tribe. The improper distributions of $1,567,981.00 from its casinos after default under the agreement retained their character as Enterprise Property, and Bank may satisfy the judgment against Tribe's general assets in that amount. Any other interpretation of Enterprise Property would allow Tribe to improperly distribute

modified, or corrected as prescribed in sections 10 and 11 of this title. . . .
Section 10(a) provides:
(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

5. The agreement defines "enterprise" as follows:
"Enterprise" means, collectively, all commercial endeavors or other business of [Tribe] or any Affiliate of [Tribe] on, at, or in connection with or related to the Casino (as it now exists or as expanded from time to time), the ownership or operation of gaming facilities (including all Class II Gaming and Class III Gaming) or any Related Business, provided that the Red River Project is specifically excluded from the definition of "Enterprise."
"Enterprise Property" is defined as the following:
"Enterprise Property" means (i) any and all now owned or hereafter acquired Property of [Tribe] or any Affiliate of [Tribe], including the Enterprise, (whether or not otherwise designated as Property of [Tribe] ) relating to, used in, used by or useful to the Enterprise that is used or to be used in connection with or arises from the present and future operations of the Enterprise (including all Class II Gaming and Class III Gaming)(including, without limitation, any now owned or hereafter acquired property which is accounted as an asset of the Enterprise in accordance with Generally Accepted Accounting Principles consistently applied), (ii) personal Property utilized in connection with the Enterprise, including, all equipment (including without limitation, gaming machines), furniture, general intangibles, contracts, inventory, accounts receivable, deposit accounts, investment property, investment securities, financial assets, and all other items which are deemed "personal property" under the Uniform Commercial Code, (iii) personal Property accounted for as an asset of the Enterprise in accordance with GAAP consistently applied, (iv) Property arising from the sale or other disposition of any or all of the foregoing Property or other assets and (v) all proceeds of any of the foregoing. Without limiting the generality of the foregoing, "Enterprise Property" includes, whether now owned or hereafter acquired: (a) the Casino, and amenities located at the Casino, (b) all gaming and other revenues of [Tribe] derived from or related to the operation of the Enterprise (including all amenities located at the Casino), (c) all funds of the Enterprise that are subject to a Distribution that is not expressly permitted by the Loan documents, (d) all funds of the Enterprise that are commingled with other assets of [Tribe], (e) all insurance and condemnation proceeds related to the Enterprise, (f) all Property that is reflected on the balance sheet of the Enterprise delivered prior to the Closing Date or any subsequent balance sheet of the Enterprise hereafter delivered by [Tribe] to [Bank] in connection with this Agreement, (g) all intangible property, whether or not located within the lands of the Apache Tribe of Oklahoma which is utilized in connection with the operation of the Enterprise, and (h) all accounts, general intangibles and other rights to receive payment arising from the present and future operations of the Enterprise (including all Class II Gaming and Class III Gaming). Provided further that the Red River Project is specifically excluded from the definition of "Enterprise Property" to the extent such property is held by an approved Subsidiary that complies with Section 6.6 of this Agreement.

funds from its casinos and block Bank's right to recover its judgment.

¶ 15 The trial court denied Tribe's motion and, pursuant to § 9 of the FAA, confirmed the award because under § 10, there are no grounds to vacate it. Tribe appeals.

¶ 16 Tribe argues that its limited waiver of sovereign immunity in the agreement does not allow Bank to seize general tribal assets to satisfy its judgment.

¶ 17 In *Apache Tribe,* the Court of Civil Appeals already determined that Tribe waived its sovereign immunity, as did the trial court in the present case.

¶ 18 Tribe's sovereign immunity is waived only as to recovery against enterprise property. That is the extent of Tribe's waiver of sovereign immunity. The trial court correctly determined that Bank may satisfy its judgment by collecting on enterprise property.

¶ 19 Nevertheless, Tribe contends that the trial court erred in confirming the arbitrator's award. Specifically, it contends the arbitrator erred in determining that general tribal assets are enterprise property to the extent of Tribe's unauthorized distributions and erred in determining that Bank may seize general tribal assets to satisfy its judgment.

¶ 20 To the extent parties have agreed to arbitrate their disputes, judicial review of the substance of the arbitration award is constrained. *Apache Tribe,* ¶ 11.[6]

¶ 21 A court will set an arbitrator's decision aside only in very unusual circumstances. *First Options of Chicago Inc., v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Because the parties "bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter,* —— U.S. ——, 133 S.Ct. 2064, 2068, 186 L.Ed.2d 113, (2013). This Court's review of the arbitrator's decision that Bank may seize general tribal assets to satisfy its judg-

ment is limited by the FAA. The standard of review applicable to arbitration awards is a highly deferential standard of review. That standard is "among the narrowest known to the law." *DMA Intern., Inc. v. Qwest Communications Intern., Inc.* 585 F.3d 1341 (10th Cir.2009). Thus, the arbitration award may be vacated only if the arbitrator exceeded his powers. 9 U.S.C. § 10(a)(4)(2002).

¶ 22 The parties agreed to arbitrate any and all disputes connected in any way to the agreement (paragraph 11.24 of agreement), and the arbitrator based his award on his contractual interpretation of several terms in the agreement, including "enterprise property." Therefore, the arbitrator did not exceed his powers in determining that Bank may seize general, nonexempt tribal assets up to the amount of improper distributions ($1,562,131.00) to satisfy its judgment. As a result, the trial court did not err in confirming the arbitrator's award.

AFFIRMED.

BUETTNER, J., and BELL, J., concur.

---

**6.** In *Apache Tribe,* the Court of Civil Appeals found the agreement contains a consent to arbi-

trate the parties' disputes.