Panzino v. MAP Mgmt. of Charlotte LLC, 2021 NCBC 10.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

MAURICE PANZINO,

            Plaintiff,

v.

MAP MANAGEMENT OF
CHARLOTTE LLC; AND PATRICK
WHALEN,

            Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 22041

**ORDER AND OPINION ON
DEFENDANTS' MOTION TO DISMISS**

1. Maurice Panzino is a former shareholder of 5Church, Inc. This is the second lawsuit in which he has claimed that others trampled his shareholder rights. The defendants, MAP Management of Charlotte LLC ("MAP") and Patrick Whalen, have moved to dismiss the complaint. (ECF No. 4.) For the following reasons, the Court **GRANTS in part** and **DENIES in part** the motion.

> *Bradley Arant Boult Cummings LLP, by Jonathan E. Schulz, Dana C. Lumsden, and Dexter Hobbs, for Plaintiff Maurice Panzino.*

> *Parker Poe Adams & Bernstein LLP, by Eric A. Frick and Eric H. Cottrell, for Defendants MAP Management of Charlotte, LLC and Patrick Whalen.*

Conrad, Judge.

I.
BACKGROUND

2. 5Church has operated a restaurant in Charlotte, North Carolina since 2012. (*See* Compl. ¶¶ 8, 12, ECF No. 3.) Although formed as a corporation, it is governed by an operating agreement of the sort usually associated with limited liability companies. (*See* Compl. ¶ 9.) The operating agreement names MAP as 5Church's

majority shareholder and "Managing Member." (Compl. ¶¶ 14, 15.) Whalen is MAP's "Managing Member and President." (Compl. ¶ 17.)

3. Soon after 5Church was formed, Panzino became a minority shareholder. The shares were payment for his work supervising construction of the Charlotte restaurant. (*See* Compl. ¶¶ 10, 11.)

4. As early as 2013, MAP decided to open a new restaurant carrying the 5Church name in Charleston, South Carolina. (*See* Compl. ¶¶ 18, 20.) Whalen invited some of 5Church's shareholders to invest in the restaurant, but he did not invite Panzino. (*See* Compl. ¶ 21.) A new business—5Church Charleston, LLC—was formed in late 2014 without Panzino's involvement. (*See* Compl. ¶¶ 23, 24.) A few years later, Whalen opened another restaurant, Sophia's Lounge, near the original restaurant in Charlotte. (*See* Compl. ¶ 28.) Again, neither Whalen nor MAP invited Panzino to invest. (*See* Compl. ¶ 29.)

5. This frustrated Panzino, who believes he was excluded in bad faith. With Panzino on the sidelines, Whalen and MAP's other members secured larger interests in both new restaurants. (*See* Compl. ¶¶ 25–27, 31.) Panzino was also frustrated with MAP's management of 5Church. He alleges that MAP gave away an excessive amount of free food and drink to investors and their guests, reducing the restaurant's revenue and, thus, his share of distributions. (*See* Compl. ¶¶ 34–36.) As a result, Panzino sold his shares in 2017. (*See* Compl. ¶ 37.)

6. In July 2018, Panzino sued 5Church and Whalen in Mecklenburg County Superior Court. That case, which remains pending, involves three claims for relief.

The first is a claim that Whalen breached his fiduciary duties by excluding Panzino from the Charleston restaurant. The second is a claim that 5Church and Whalen breached the operating agreement by excluding Panzino from Sophia's Lounge, failing to provide financial information on a monthly basis, and failing to make required distributions. The third is a request for an equitable accounting. The Court issued an opinion in that case that describes the claims in more detail. *See generally Panzino v. 5Church, Inc.*, 2020 NCBC LEXIS 17 (N.C. Super. Ct. Feb. 12, 2020) (granting motion for summary judgment in part and denying it in part).

7. In November 2019, Panzino filed this suit against MAP and Whalen. Panzino asserts claims for constructive fraud and breach of fiduciary duty against MAP. (*See* Compl. ¶¶ 59–69, 70–73.) He further alleges that MAP is Whalen's alter ego and seeks to hold Whalen liable on a veil-piercing theory. (*See* Compl. ¶¶ 39–58.)

8. MAP and Whalen have moved to dismiss both claims. After full briefing and a hearing in June 2020, the motion is now ripe for disposition.

II.
ANALYSIS

9. Constructive fraud and breach of fiduciary duty are distinct claims with overlapping elements. To state a claim for breach of fiduciary duty, the plaintiff must plead the existence of a fiduciary duty, a breach of that duty, and injury proximately caused by the breach. *See Green v. Freeman*, 367 N.C. 136, 141 (2013). Constructive fraud requires, as an additional element, that the defendant sought to benefit himself through the breach. *See White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294 (2004).

10.     Here, the claims are premised on an alleged fiduciary relationship between MAP, as majority shareholder of 5Church, and Panzino, as a minority shareholder. (*See* Compl. ¶¶ 60, 64.)   Panzino bases his claim for constructive fraud on the allegation that MAP breached its fiduciary duties when it denied him the chance to invest in the Charleston restaurant and Sophia's Lounge.  (*See* Compl. ¶¶ 60–68.) Panzino bases his separate claim for breach of fiduciary duty on the allegation that MAP mismanaged 5Church by giving away too much free food and drink.  (*See* Compl. ¶¶ 71, 72.)  MAP and Whalen seek to dismiss both claims.  The Court considers each in turn.

## A.  Constructive Fraud

11.     MAP and Whalen challenge the claim for constructive fraud on two grounds. First, they observe that Panzino's original lawsuit against 5Church and Whalen involves similar allegations about the Charleston restaurant and Sophia's lounge. This claim, they contend, covers the same subject matter and is therefore barred by the prior pending action doctrine. (*See, e.g.*, Br. in Supp. 8–9, ECF No. 6.)

12.     Second, MAP and Whalen argue that the complaint fails to state a claim for relief under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.  (*See* Br. in Supp. 13–14.)  As discussed below, the Court agrees with this second argument and therefore need not reach the first.  *See, e.g.*, *Greene v. Tr. Servs. of Carolina, LLC*, 244 N.C. App. 583, 591 (2016) (affirming dismissal of claim under Rule 12(b)(6) without reaching alternative ground under prior pending action doctrine); *Thomas v. N.C.*

*Cent. Univ.*, 2012 N.C. App. LEXIS 801, at \*6–7 (N.C. Ct. App. 2012) (unpublished) (same).

13. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation and quotation marks omitted). The motion should be granted only when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted). In deciding the motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences "in the light most favorable to" the nonmoving party. *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019) (citation and quotation marks omitted).

14. Solely for purposes of their motion, MAP and Whalen assume the existence of a fiduciary relationship between MAP and Panzino. Even so, they contend that MAP did not breach its fiduciary duties by failing to offer Panzino a chance to invest in businesses separate from 5Church. They contend that there is no "duty to allow individual shareholders the opportunity to invest in an independent business subsequently opened by another shareholder." (Br. in Supp. 14.) Panzino disagrees, responding that MAP has the burden to show that it acted fairly and in good faith toward him. (*See* Opp'n 8–9, ECF No. 9.)

15. The usual rule is that shareholders do not owe fiduciary duties to one another or to the corporation. Majority shareholders, however, "draw to themselves and use all the powers of the corporation." *Gaines v. Long Mfg. Co.*, 234 N.C. 340, 344 (1951). Control of the corporation imposes

> a correlative duty . . . to exercise good faith, care, and diligence to make the property of the corporation produce the largest possible amount, to protect the interests of the holders of the minority of the stock, and to secure and pay over to them their just proportion of the income and of the proceeds of the corporate property. The controlling majority of the stockholders of a corporation, while not trustees in a technical sense, have a real duty to protect the interests of the minority *in the management of the corporation*, especially where they undertake to run the corporation without giving the minority a voice therein.

*Id.* (emphasis added) (citation omitted).

16. Assuming that MAP had a fiduciary duty to protect Panzino's interests in the management of 5Church and the corporate property, the complaint does not allege a breach of that duty. Rather, the complaint alleges that MAP started two new restaurant businesses but did not enlist Panzino to become a co-owner of those separate businesses. Even taking these allegations as true, they do not amount to a breach of the fiduciary duties that MAP owed in its role as majority shareholder of 5Church.

17. In his opposition, Panzino cites two cases from other jurisdictions to support his more expansive view of a majority shareholder's fiduciary duties. Neither addresses the issue here. The first case deals with a general partner's decision to exclude a limited partner from the partnership's investment fund. It has nothing to do with separate business ventures. *See Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1204, 1206–07 (Del. 1993).

18.     The second case is an unpublished decision affirming the confirmation of an arbitration award. The underlying dispute between two LLC members appears to have been based on a provision in an operating agreement that gave each member the option to participate in new businesses developed by the other. In discussing the arbitrator's award, the court did not address that provision or the nature of any fiduciary duties the members owed to each other. *See Bevan v. DaVita, Inc.*, 557 F. App'x 706, 709–11 (10th Cir. 2014).

19.     It bears noting that 5Church's operating agreement gives its shareholders a right of first refusal to invest in "a second business to be opened after the commencement of this business." *Panzino*, 2020 NCBC LEXIS 17, at *13 (quoting operating agreement). In his original lawsuit, Panzino claimed that 5Church and Whalen breached this provision by failing to offer an opportunity to invest in Sophia's Lounge. The Court granted summary judgment in favor of 5Church and Whalen because it was undisputed that Sophia's Lounge was not the "second business" that opened. *See id.* at *13–15. In this case, Panzino does not rely on the operating agreement to support his claim.[*]

20.     In short, the complaint does not adequately allege a breach of the fiduciary duties owed by MAP and therefore does not state a claim for constructive fraud. The Court therefore grants the motion to dismiss this claim.

---

[*] The existence of a contractual provision addressing shareholder rights regarding new businesses could implicate the economic loss rule, but neither side has raised the issue. *See, e.g., Perry v. Frigi-Temp Frigeration, Inc.*, 2020 NCBC LEXIS 100, at *15–19 (N.C. Super. Ct. Sept. 3, 2020) (dismissing minority shareholder's claim for constructive fraud based on economic loss rule).

B.  Breach of Fiduciary Duty

21.    Panzino's second claim is for breach of fiduciary duty.  MAP and Whalen contend that the claim is barred by the prior pending action doctrine, but they have not argued that the claim fails to state a claim for relief.  (*See, e.g.*, Br. in Supp. 9–10.)

22.    "Under the law of this state, where a prior action is pending between the same parties for the same subject matter in a court within the state having like jurisdiction, the prior action serves to abate the subsequent action."  *Eways v. Governor's Island*, 326 N.C. 552, 558 (1990).  "This is so because the court can dispose of the entire controversy in the prior action and in consequence the subsequent action is wholly unnecessary.  By abating the second action, a multiplicity of actions is prevented."  *Clark v. Craven Regional Med. Auth.*, 326 N.C. 15, 20 (1990).  The test is this: "Do the two actions present a substantial identity as to parties, subject matter, issues involved, and relief demanded?"  *Cameron v. Cameron*, 235 N.C. 82, 85 (1952).

23.    Assuming without deciding that the parties in the two actions are substantially similar, the Court concludes that there is not a substantial identity as to the subject matter and issues involved.  The claim for breach of fiduciary duty in this case rests on allegations that MAP mismanaged 5Church by giving free food and drink to investors.  (*See* Compl. ¶ 72.)  Although MAP and Whalen contend that the first-filed action also involves allegations of mismanagement, the theories in that case are substantially different.  There, Panzino claims that Whalen (not MAP) breached

the operating agreement (not his fiduciary duties) by withholding financial information and limiting distributions (not by giving away free food and drink).

24. Put simply, the claim for breach of fiduciary duty in this action is substantially different from the claims at issue in the first-filed action. These differences "preclude abatement as to th[e] claim" for breach of fiduciary duty. *Clark*, 326 N.C. at 22; *see also Gibbs v. Guilford Tech. Cmty. Coll.*, 2002 N.C. App. LEXIS 1879, at *7–10 (N.C. Ct. App. Apr. 16, 2002) (unpublished).

25. MAP and Whalen also argue that the introduction of a new claim is an attempt to circumvent the case management order in the original action and the procedural rules that govern amendments to the complaint. (*See* Br. in Supp. 11–13.) Even if this were correct, MAP and Whalen have not cited any precedent for dismissing a claim for these reasons when there is no substantial identity of parties, subject matter, issues, or relief demanded. The Court declines to do so.

26. The claim for breach of fiduciary duty is not barred by the prior pending action doctrine. The Court therefore denies the motion to dismiss the claim.

### III.
### CONCLUSION

27. For all these reasons, the Court **GRANTS** the motion to dismiss the claim for constructive fraud. In all other respects, the Court **DENIES** the motion.

28. The parties shall file a revised case management report and proposed case management order containing amended case management deadlines no later than March 12, 2021. The parties' revised case management report and proposed case management order shall comply with Business Court Rule 9.

**SO ORDERED**, this the 12th day of February, 2021.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases